UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

JENNIFER CALCANO,                                    No.: 1:19-cv-11363

                            Plaintiff,

                                                     **COMPLAINT   AND   DEMAND**
                                                     **FOR JURY TRIAL**

            -against-

NEW YORK CITY HOUSING AUTHORITY, and
GENE THOMAS MITCHELL,

                            Defendants.
-------------------------------------------------------------------X

Plaintiff, JENNIFER CALCANO, by and through her attorneys, MARK DAVID

SHIRIAN, P.C., complaining of the Defendants, NEW YORK CITY HOUSING AUTHORITY,

and GENE THOMAS MITCHELL, respectfully alleges as follows:

## PRELIMINARY STATEMENT

1.   This action is brought by Plaintiff Jennifer Calcano ("Calcano" or "Plaintiff") to

enforce Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments

Act of 1988, 42 U.S.C. 3601, et seq., specifically 3604(b), 3613(c), and 3617 ( "the Fair Housing

Act") , and Title 8, chapter1, of the Administrative Code of the City of New York, N.Y.C. Admin.

Code 8-101 *et seq*., as amended, specifically Code 8-107[5](a), 8-107[7] and 8-502. (hereafter the

"NYCHRL" or the "City Law"), and Sections 296(5) and 296(6) of the New York State Human

Rights Law, (hereafter "NYSHRL" or the "State Law"), against the Defendants, NEW YORK

CITY HOUSING AUTHORITY (hereafter "NYCHA") and GENE THOMAS MITCHELL

(hereafter Mitchell), (collectively "Defendants"), for their outrageous and unlawful mistreatment

of Plaintiff during her tenancy with the NEW YORK CITY HOUSING AUTHORITY and for

violations of housing discrimination, hostile housing environment, and retaliation claims brought

pursuant to the Fair Housing Act, and New York State and City Laws. The plaintiff also brings this action under New York State Common Law for sexual assault.

## JURISDICTION AND VENUE

2.   This court has original federal question jurisdiction under 28 U.S.C. 1331 and 1343 because this case is brought for sex discrimination, hostile housing environment and retaliation under the Fair Housing Act. This Court has supplemental jurisdiction over Plaintiff's NYSHRL and NYCHRL and civil assault claims as they are so related to the claims in this action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

3.   Venue properly lies in the Southern District of New York pursuant to 28 U.S.C. 1391(b), because the claims arose in this judicial district and the defendant NYCHA is doing business in this District.

## PARTIES

4.   Plaintiff JENNIFER CALCANO is a 32 year-old Hispanic female and resides in New York County, City and State of New York.

5.   At all relevant times, Plaintiff JENNIFER CALCANO met the definitions of a "tenant" under all applicable statutes.

6.   At all relevant times, Defendant, NEW YORK CITY HOUSING AUTHORITY (hereinafter "NYCHA"), was and still is a public-benefit authority, organized and existing under and by virtue of the laws of the State of New York.

7.  At all relevant times, Defendant, NEW YORK CITY HOUSING AUTHORITY was the first agency in the United States to provide housing for low- and moderate-income residents throughout the five boroughs of New York City. NYCHA also administers a citywide Section 8 Leased Housing Program in rental apartments.

8.  At all relevant times, NEW YORK CITY HOUSING AUTHORITY has met the definition of a "building" under all applicable statutes.

9.  At all relevant times, Defendant, NEW YORK CITY HOUSING AUTHORITY was a landlord of JENNIFER CALCANO at all relevant times to this action.

10. Defendant, GENE THOMAS MITCHELL, was employed by NYCHA as a maintenance worker at Wise Towers from 2017 through July 2019 and is a resident of the State of New York.

11. Defendant GENE THOMAS MITCHELL (hereinafter "Mitchell") is and was at all relevant times herein acting in the course and scope of his duties and functions for NEW YORK CITY HOUSING AUTHORITY as an agent, servant, and employee of defendant NEW YORK CITY HOUSING AUTHORITY, and was acting for, and on behalf of, and with the power and authority vested in him by NEW YORK CITY HOUSING AUTHORITY, and was otherwise performing and engaging in conduct incidental to the performance of his functions in the course of his duties as a maintenance worker, who implemented, enforced, and/or effectuated the policies and unlawful conduct of which is the subject policy of this action. Defendant GENE THOMAS MITCHELL is sued in his individual and official capacity.

## FACTUAL BACKGROUND

12. The plaintiff has resided at 23 West 90th Street, Apt. 3A, in New York, New York 10024 (the Apartment) for approximately 30 years, which is also called "Wise Towers".

13. The defendant NYCHA is the owner of the building in which the plaintiff resides.

14. The defendant NYCHA is the managing agent of the building in which the plaintiff resides.

15. Plaintiff is a single mother to a 17 month old son and two daughters, ages 14 and 12.

16. This is a sexual harassment, hostile housing environment and unlawful retaliation case. The defendant GENE THOMAS MITCHELL, the maintenance worker employed to work in Wise Towers, repeatedly made unwanted sexual advances and subjected the plaintiff to sexually explicit and humiliating comments about her anatomy.

17. On almost a daily basis since 2018, plaintiff has been subjected to the repeated trauma and insult of seeing defendant GENE THOMAS MITCHELL in and around the building in which she resides.

18. In or around 2018, Defendant Mitchell used an Instagram account with the handle "gene_thomas_" and sent messages to Plaintiff without disclosing his true identity nor did he ever disclose that he worked in Wise Towers.

19. On November 24, 2018, Defendant Thomas sent Plaintiff the following direct messages on Instagram:

- "Good Morning.";
- "How are you doing today.";

4

- "What do you get turned on by?";

20. Defendant Thomas then falsely held himself out as a photographer and offered Plaintiff the opportunity for a photo shoot via Instagram direct messages.

21. Defendant Thomas asked Plaintiff if he can "come through tomorrow morning."

22. Defendant Thomas sent Plaintiff messages demanding a picture of her and for plaintiff to send him "something sexy."

23. Defendant Thomas sent Plaintiff messages asking Plaintiff when she is available and also sent her his phone number "so we can set something up."

24. Defendant Thomas then sent Plaintiff a message asking her if he could see her that night.

25. At no time did Defendant Mitchell hold himself out as a NYCHA employee who worked in Plaintiff's building. Moreover, Plaintiff was not aware that it was Defendant Mitchell messaging her.

26. In or around September 2018, Plaintiff's apartment was flooded and damaged by water from another neighbor's apartment.

27. Plaintiff called NYCHA about making repairs to the damage to her apartment caused by the flood.

28. Defendant Mitchell entered Plaintiff's apartment the next morning.

29. When Defendant Mitchell arrived at Plaintiff's apartment, Plaintiff was in her apartment with her boyfriend and her then four month old son.

30. Defendant Mitchell inspected the apartment and spoke with both Plaintiff and her boyfriend and eventually left the apartment.

31. A few weeks later, a tree fell because of a recent snow fall and hit the apartment building and the tree pierced the exterior portion of Plaintiff's apartment, causing an opening. As a result, rain entered Plaintiff's apartment through the opening of the exterior.

32. On December 31, 2018, rain fall caused flooding into Plaintiff's apartment because of the opening into Plaintiff's apartment.

33. Plaintiff immediately called defendant NYCHA to complain and report the flooding.

34. In response, NYCHA said that they would send a maintenance worker to Plaintiff's apartment within twenty-four hours.

35. On or about January 1, 2019, the next day, Plaintiff received a phone call from a phone number that she did not recognize, which is contrary to NYCHA policy.

36. Pursuant to NYCHA policy, NYCHA employees would leave a note and ask to be called again if they came for an appointment when no one was home.

37. Sometime thereafter, in or around January 2019, Defendant Mitchell called Plaintiff again and asked if Plaintiff was home. Plaintiff was not home at that time and she stated that she would initiate a ticket again.

38. On or about January 7, 2019, Plaintiff came home early from work and Defendant Mitchell called again and asked if she was home.

39. On or about January 7, 2019, Defendant Mitchell arrived at Plaintiff's apartment at around 1 PM.

40. On or about January 7, 2019, Defendant Mitchell inspected Plaintiff's apartment and insisted that the rain was coming from upstairs.

41. While Defendant Mitchell was inside Plaintiff's apartment, Plaintiff showed Defendant Mitchell a video that her daughter previously took on December 31, 2018 of the leak.

42. At the time of Defendant Mitchell's inspection, Plaintiff was wearing grey leggings and a white shirt and green Ugg brand boots.

43. Plaintiff has a tattoo on her right buttocks of a black orchid, which is not openly visible.

44. While Defendant Mitchell was near Plaintiff's dresser by the leak, Plaintiff was located by her bed when she was about show Defendant Mitchell the video of the leak.

45. As Plaintiff went to look through her phone, Defendant Mitchell made the following sexually charged comment to Plaintiff: "by the way nice tattoo, can you pull your pants down so I can see it better?"

46. Plaintiff looked confused and told Defendant Mitchell that she would absolutely not pull down her pants.

47. Plaintiff became scared and attempted to convince Defendant Mitchell to leave her apartment. However, Defendant Mitchell proceeded to speak about the water leak.

48. Defendant Mitchell then proceeded to ask Plaintiff if he could use her bathroom.

49. Defendant Mitchell spent five minutes in Plaintiff's bathroom.

50. Defendant Mitchell came out of the bathroom and then informed Plaintiff that he is certified in removing mold and then asked Plaintiff why she never responds to his messages on Instagram and stated "stay dubbing me"[1]

51. Plaintiff became further shocked and proceeded to ask Defendant Mitchell what his Instagram handle and user name was and he stated that it was "gene_thomas_."

52. After Defendant Mitchell stated his identity behind his Instagram handle, Plaintiff realized that it had been Defendant Mitchell who had been sending her sexually charged messages and requests.

53. Defendant Mitchell then went upstairs to check about the leak and came back down to Plaintiff's apartment and informed her that there is no leak from upstairs.

54. Defendant Mitchell came back down to Plaintiff's apartment and continued to send her intimate messages about Instagram.

55. On previous occasions, Defendant Mitchell never disclosed his true self and identity, and falsely held himself out as a photographer on his Instagram page and previously sent direct messages on Instagram to Plaintiff, requesting to take intimate photos of Plaintiff, although she declined.

56. A review of Defendant Mitchell's Instagram page reveals that there are no photographs of him but rather provocative photographs of other females. Defendant Mitchell's Instagram page

---

[1] According to Urban Dictionary, "dubbed" means get ignored ; some one ignores you ; you get rejected https://www.urbandictionary.com/define.php?term=Dubbed

did not reveal his true identity and Plaintiff was not aware that the male who had messaged her was actually Defendant Mitchell.

57. On January 7, 2019, Defendant Mitchell sent Plaintiff a message that said "Gee" as he went up to another floor.

58. Defendant Mitchell knocked on Plaintiff's door and Plaintiff's son's uncle was present and Defendant Mitchell abruptly left without having Plaintiff sign a ticket.

59. Plaintiff sent Defendant Thomas a message stating "you know the day you (came) to my apartment and asked to see my tattoo you made me uncomfortable."

60. In response, Defendant Thomas sent Plaintiff the following messages:

- "Is everything alright";
- "?";
- "I noticed your acting a little different'"
- "But it's cool let's keep it Business and professional.";
- "But listen I think you're cool person never ment any disrespect tords you, A little nervous of you because I was told you are a little crazy and could be crazy when you wanna be, And I don't need the drma so ill just keep my distance."

61. Plaintiff then sent the following message in response:

"Doesn't make sense that you would (ask) me something inappropriate? I don't think you realized when you first dm me I had absolutely no idea it was you. That's why when you were speaking to me asking me things I was confused, I don't know exactly who told you what (I have an idea) they told me you were being nosy and looking over their shoulder. That's how you followed me. I'm expressing it made me uncomfortable and all I'm asking is for you to leave me alone . Have a nice life."

62. A few days later, on or about January 17, 2019, Plaintiff reported the harassment she endured by Defendant Mitchell to Cynthia Tibbs, who is a Resident Leader within Wise Towers.

63. Ms. Tibbs informed Plaintiff that Defendant Mitchell would no longer be visiting her unit.

64. Later in January 2019, Plaintiff attempted to move her car because of alternative side parking. Defendant Mitchell observed Plaintiff and told her that he needed to visit her apartment. Plaintiff declined.

65. Thereafter, Defendant Mitchell sent Plaintiff another message on Instagram.

66. Plaintiff then informed Defendant Mitchell that his actions made her feel uncomfortable, since she just realized it was Defendant Mitchell messaging her on Instagram, as she was unaware of his identity on Instagram previously.

67. On January 20, 2019, Plaintiff was outside of the Apartment building and Defendant Mitchell saw her and said that he had a ticket to come to her apartment and asked her to go up with him, however Plaintiff refused to allow Defendant Mitchell back in her apartment.

68. Plaintiff attempted to make a meeting with NYCHA Investigator Alton Hammon about Defendant Mitchell's conduct. However, Plaintiff became sick and attempted to reschedule the meeting.

69. Mr. Hammon did not respond to Plaintiff's multiple requests to reschedule.

70. Cynthia Tibbs then informed Plaintiff that NYCHA transferred Defendant Mitchell to Brooklyn in January 2019.

71. Upon information and belief, in February through April 2019, Defendant Mitchell was not in the building.

72. However, in May 2019, Plaintiff saw Defendant Mitchell in her apartment building.

73. In or around May 10, 2019, Plaintiff filed a sexual harassment complaint with the Department of Equal Opportunity (DEO) against Defendant Mitchell for his harassing and inappropriate conduct.

74. In or around May 10, 2019, Plaintiff asked NYCHA why Defendant Mitchell had been brought back to work in Wise Towers. The NYCHA representative informed Plaintiff that she could move out of her apartment unit if she felt uncomfortable with Defendant Mitchell.

75. On or about July 12, 2019, after an investigation by the DEO, it was determined that there was probable cause to believe that Defendant Mitchell sexually harassed Plaintiff.

76. On or about July 15, 2019, Defendant Mitchell was terminated from his employment at NYCHA.

77. Upon information and belief, Defendant Mitchell's mother was employed by Defendant NYCHA and continues to be employed by defendant NYCHA.

78. Since Plaintiff made complaints to NYCHA about Defendant Mitchell, NYCHA unlawfully retaliated and continues to retaliate against Plaintiff by ignoring her requests for repairs to her unit because she filed a complaint against Defendant Mitchell.

79. Plaintiff believes that Defendants engaged in quid pro quo sexual harassment, as Plaintiff's requests for repairs to her unit have been ignored by NYCHA since she declined the advances of Defendant Mitchell.

## COUNT I
## VIOLATION OF THE FAIR HOUSING ACT — SEXUAL HARASSMENT
### (Against Defendants NYCHA and Mitchell)

80. Plaintiff repeats the above paragraphs.

81. Plaintiff is a female and an aggrieved person as defined in 42 U.S.C. 3602(i), and has suffered damages as a result of Defendants' conduct.

82. The Apartment is a "dwelling" within the meaning of 42 U.S.C. 3604(b), as defined by 42 U.S.C. 3602(h).

83. By the actions and statements described above, the Defendant NYCHA, and its agents and employees, including Defendant Mitchell have:

    a.  Discriminated against Plaintiff in the terms, conditions, or privileges of the rental of dwellings, or in the provision of services or facilities in connection therewith, because of sex, in violation of 42 U.S.C. § 3604(b);

    b.  Made statements that indicate discrimination based on sex, in violation of Section 804 (c) of the Fair Housing Act, 42 U.S.C.§ 3604(c);

    c.  Discriminated in the terms or conditions of residential real estate-related transactions because of sex, in violation of 42 U.S.C. § 3605; and

    d.  Coerced, intimidated, threatened, or interfered with Plaintiff in the exercise or enjoyment of, or on account of her having exercised or enjoyed, her rights granted or protected by Sections 804 and 805 of the Fair Housing Act, in violation of 42 U.S.C. § 3617.

84. The actions of Defendants, including but not limited to the actions outlined above, constituted unwelcome sexual harassment and were directed at Plaintiff because of her sex in violation of the Fair Housing Act.

85. The Defendant NYCHA's conduct, and its agents and employees, including Defendant Mitchell constitutes a pattern or practice of resistance to the full enjoyment of the rights granted by the Fair Housing Act, 42 U.S.C. §§ 3601, *et seq.*

86. Plaintiff has been injured by the Defendants' discriminatory conduct.

87. Plaintiff is an aggrieved persons as defined in 42 U.S.C. § 3602(i), and has suffered damages as a result of the Defendant NYCHA's conduct, and its agents and employees, including Defendant Mitchell.

88. The defendants' actions herein constitute discrimination on the basis of sex in violation of 42 U.S.C. 3604(b).

89. The defendants' actions herein constitute discriminatory practices pursuant to 42 U.S.C. 3602(f).

90. The actions of the defendants were intentional, willful, and taken in disregard for the rights of the plaintiff.

## COUNT II
## VIOLATION OF THE FAIR HOUSING ACT —
## HOSTILE HOUSING ENVIRONMENT
### (Against Defendants NYCHA and Mitchell)

91. Plaintiff repeats the above paragraphs.

92. The defendants' actions herein constitute discrimination on the basis of sex in violation of 42 U.S.C. 3604(b).

93. The defendants' actions herein constitute discriminatory practices pursuant to 42 U.S.C. 3602(f).

94. The Defendants tolerated and/or facilitated Defendant Mitchell's pattern or sexual harassment towards Plaintiff, despite requests to investigate Defendant Mitchell and intervene on behalf of Plaintiff.

95. Defendant Mitchell's actions and NYCHA's tolerance and/or facilitation of said acts were sufficiently pervasive and severe so as to create a hostile housing environment based on sexual harassment in violation of Plaintiff's rights, as protected by the Fair Housing Act, 42 U.S.C. 3617.

96. The actions of the defendants were intentional, willful, and taken in disregard for the rights of the plaintiff.

97. The actions of Defendant Mitchell and NYCHA were sufficiently severe and/or pervasive so as to interfere with and/or deprive the Plaintiff of her right to use or enjoy her home.

98. The plaintiff is an aggrieved person as defined in 42 U.S.C. 3602(i), and has suffered damages as a result of the Defendants' described conduct.

## COUNT III
## VIOLATION OF THE FAIR HOUSING ACT — RETALIATION
### (Against Defendants NYCHA and Mitchell)

90. Plaintiff repeats the above paragraphs.

91. The Plaintiff's acts of complaining about Defendant Mitchell constitute activities opposing the defendants' discriminatory practices and constitute the filing of a complaint.

92. Defendants were aware of Plaintiff's protected activity.

93. Defendants' actions as described herein, namely its gross and intentional failure and unwillingness to make repairs to Plaintiff's unit and for suggesting that Plaintiff move out of her unit, taken after the plaintiff's protected activity, were motivated by the plaintiff's protected activity.

94. Defendants' acts as described herein constitute unlawful retaliation under the Fair Housing Act.

95. The plaintiff is an aggrieved person as defined in 42 U.S.C. 3602(i), and has suffered damages as a result of the Defendants' described conduct.

## COUNT IV
## VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW —
## SEXUAL HARASSMENT – NYC ADMIN. CODE 8-107(5)(a)(2)
### (Against Defendants NYCHA and Mitchell)

96. Plaintiff repeats the above paragraphs.

97. The apartment is a "housing accommodation" within the meaning of N.Y.C. Admin. Code 8-102(10) and 8-107[5].

98. By the actions and statements described above, the Defendant NYCHA, and its agents and employees, including Defendant Mitchell have:

    a. Discriminated against Plaintiff in the terms, conditions, or privileges of the rental of dwellings, or in the provision of services or facilities in connection therewith, because of sex, in violation of N.Y.C. Admin. Code 8-107[5](2).

    b. Made statements that indicate discrimination based on sex, in violation of N.Y.C. Admin. Code 8-107[5](2).

    c. Discriminated in the terms or conditions of residential real estate-

related transactions because of sex, in violation of N.Y.C. Admin.

Code 8-107[5](2).

d.   Coerced, intimidated, threatened, or interfered with Plaintiff in the exercise or

enjoyment of, or on account of her having exercised or enjoyed, her rights

granted or protected by N.Y.C. Admin. Code 8-107[5](2).

99. The actions of Defendants, including but not limited to the actions outlined above,

constituted unwelcome sexual harassment and were directed at Plaintiff because of her sex in

violation of N.Y.C. Admin. Code 8-107[5](2)..

100.    The Defendant NYCHA's conduct, and its agents and employees, including

Defendant Mitchell constitutes a pattern or practice of resistance to the full enjoyment of the rights

granted by N.Y.C. Admin. Code 8-107[5](2).

101.    Plaintiff has been injured by the Defendants' discriminatory conduct.

102.    Plaintiff has suffered damages as a result of the Defendant NYCHA's conduct, and

its agents and employees, including Defendant Mitchell.

103.    The defendants' actions herein constitute discrimination on the basis of sex in

violation of N.Y.C. Admin. Code 8-107[5](2).

104.    The defendants' actions herein constitute discriminatory practices pursuant to

N.Y.C. Admin. Code 8-107[5](2).

105.    The actions of the defendants were intentional, willful, and taken in disregard for

the rights of the plaintiff.

106.    The defendants' actions as previously described herein constitute discrimination on the basis of sex in violation of N.Y.C. Admin. Code 8-107[5](2).

## COUNT V
## VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW — RETALIATION – NYC ADMIN. CODE 8-107(7)
### (Against Defendants NYCHA and Mitchell)

90. Plaintiff repeats the above paragraphs.

91. The Plaintiff's acts of complaining about Defendant Mitchell constitute activities opposing the defendants' discriminatory practices and constitute the filing of a complaint.

92. Defendants were aware of Plaintiff's protected activity.

93. Defendants' actions as described herein, namely its gross and intentional failure and unwillingness to make repairs to Plaintiff's unit and for suggesting that Plaintiff move out of her unit, taken after the plaintiff's protected activity, were motivated by the plaintiff's protected activity.

94. Defendants' acts as described herein constitute unlawful retaliation under N.Y.C. Admin. Code 8-107[7].

95. The plaintiff is an aggrieved person and has suffered damages as a result of the Defendants' described conduct.

## COUNT VI
## THE NEW YORK CITY HUMAN RIGHTS LAW — HOSTILE HOUSING ENVIRONMENT
### (Against Defendants NYCHA and Mitchell)

96. The defendants' actions herein constitute discrimination on the basis of sex in violation of the NYCHRL.

97. The defendants' actions herein constitute discriminatory practices.

98. The Defendants tolerated and/or facilitated Defendant Mitchell's pattern or sexual harassment towards Plaintiff, despite requests to investigate Defendant Mitchell and intervene on behalf of Plaintiff.

99. Defendant Mitchell's actions and NYCHA's tolerance and/or facilitation of said acts were sufficiently pervasive and severe so as to create a hostile housing environment based on sexual harassment in violation of Plaintiff's rights, as protected by the under N.Y.C. Admin. Code 8-107[7].

100.    The actions of the defendants were intentional, willful, and taken in disregard for the rights of the plaintiff.

101.    The actions of Defendant Mitchell and NYCHA were sufficiently severe and/or pervasive so as to interfere with and/or deprive the Plaintiff of her right to use or enjoy her home.

102.    The actions of the defendants were intentional, willful, and taken in disregard for the rights of the plaintiff.

103.    The actions of Defendant Mitchell and NYCHA were sufficiently severe and/or pervasive so as to interfere with and/or deprive the Plaintiff of her right to use or enjoy her home.

104.    The plaintiff suffered damages as a result of the Defendants' described conduct.

<u>**COUNT VII**</u>
<u>**VIOLATION OF THE NEW YORK STATE EXECUTIVE LAW 296(5) — SEXUAL HARASSMENT**</u>
**(Against Defendants NYCHA and Mitchell)**

99. Plaintiff repeats the above paragraphs

100.   Plaintiff is a female and an aggrieved person and has suffered damages as a result of Defendants' conduct.

101.   The Apartment is a "dwelling".

102.   By the actions and statements described above, the Defendant NYCHA, and its agents and employees, including Defendant Mitchell have:

   a. Discriminated against Plaintiff in the terms, conditions, or privileges of the rental of dwellings, or in the provision of services or facilities in connection therewith, because of sex, in violation of New York Executive Law 296(5).

   b. Made statements that indicate discrimination based on sex, in violation of New York Executive Law 296(5);

   c. Discriminated in the terms or conditions of residential real estate-related transactions because of sex, in violation of New York Executive Law 296(5); and

   d. Coerced, intimidated, threatened, or interfered with Plaintiff in the exercise or enjoyment of, or on account of her having exercised or enjoyed, her rights granted or protected by New York Executive Law 296(5).

103.   The actions of Defendants, including but not limited to the actions outlined above, constituted unwelcome sexual harassment and were directed at Plaintiff because of her sex in violation of the New York Executive Law 296(5).

104.   The Defendant NYCHA's conduct, and its agents and employees, including Defendant Mitchell constitutes a pattern or practice of resistance to Plaintiff's full enjoyment of her rights granted by the NYSHRL.

105.    Plaintiff has been injured by the Defendants' discriminatory conduct.

106.    Plaintiff is an aggrieved persons and has suffered damages as a result of the Defendant NYCHA's conduct, and its agents and employees, including Defendant Mitchell.

107.    The defendants' actions herein constitute discrimination on the basis of sex in violation of New York Executive Law 296(5).

108.    The defendants' actions herein constitute discriminatory practices pursuant to NYSHRL.

109.    The actions of the defendants were intentional, willful, and taken in disregard for the rights of the plaintiff.

## COUNT VIII
## VIOLATION OF THE NEW YORK EXECUTIVE LAW 296 (6)
### (Against Defendants NYCHA and Mitchell)

110.    The defendants' actions herein constitute discrimination on the basis of sex in violation of NYSHRL.

111.    The defendants' actions herein constitute discriminatory practices pursuant to NYSHRL.

112.    The Defendants tolerated and/or facilitated Defendant Mitchell's pattern or sexual harassment towards Plaintiff, despite requests to investigate Defendant Mitchell and intervene on behalf of Plaintiff.

113.    Defendant Mitchell's actions and NYCHA's tolerance and/or facilitation of said acts were sufficiently pervasive and severe so as to create a hostile housing environment based on sexual harassment in violation of Plaintiff's rights, as protected by the New York State

Human Rights Law, New York Executive Law 296(6), Defendants aided and abetted unlawful discrimination against Plaintiff on the basis of sex.

114.    The actions of the defendants were intentional, willful, and taken in disregard for the rights of the plaintiff.

## COUNT IX
## VIOLATION OF THE NYSHRL — RETALIATION
### (Against Defendants NYCHA and Mitchell)

107.     Plaintiff repeats the above paragraphs.

108.    The Plaintiff's acts of complaining about Defendant Mitchell constitute activities opposing the defendants' discriminatory practices and constitute the filing of a complaint.

109.    Defendants were aware of Plaintiff's protected activity.

110.    Defendants' actions as described herein, namely its gross and intentional failure and unwillingness to make repairs to Plaintiff's unit and for suggesting that Plaintiff move out of her unit, taken after the plaintiff's protected activity were motivated by the plaintiff's protected activity.

111.    Defendants' acts as described herein constitute unlawful retaliation under the NYSHRL.

## COUNT X
## NEGLIGENT HIRING, SUPERVISION AND RETENTION
### (Against Defendant NYCHA)

112.    Plaintiff **JENNIFER CALCANO** repeats and realleges by reference each and every allegation contained in the above stated paragraphs, and incorporates the same herein as though fully set forth.

113.    That it was the duty of defendants to properly interview, investigate and supervise the background of its employees to ensure said employees, including defendant **GENE THOMAS MITCHELL,** did not present a risk of injury to the Plaintiff, **JENNIFER CALCANO,** and other residents of the premises.

114.    That defendants, by and through their agents and/or employees breached their duty to Plaintiff, **JENNIFER CALCANO,** in failing to properly interview, investigate and supervise the background of its employees, including **GENE THOMAS MITCHELL,** to ensure said employees did not present a risk of injury to Plaintiff, **JENNIFER CALCANO,** and the tenants of the premises, which resulted in severe emotional distress to Plaintiff, **JENNIFER CALCANO.**

115.    That defendant **GENE THOMAS MITCHELL** was acting within the scope of his employment at the time he stalked, harassed, aggravated, endangered, intimidated, and threatened Plaintiff, **JENNIFER CALCANO**.

116.    That defendants by their servants, agents, and/or employees had actual and constructive notice of the offensive conduct and sexual propensities of supervisor, **GENE THOMAS MITCHELL.**

117.    That defendants by their servants, agents, and/or employees received prior complaints from Plaintiff **JENNIFER CALCANO** and employees at the premises regarding the sexual propensities and offensive conduct of supervisor, **GENE THOMAS MITCHELL.**

118.    That defendants by their servants, agents, and/or employees continued to employ and/or retained **GENE THOMAS MITCHELL**, after receiving actual and constructive notice of the offensive conduct and sexual propensities of, **GENE THOMAS MITCHELL.**

119.   That it was foreseeable to defendants that a sexual attack would occur, based on defendants' actual and constructive knowledge of **GENE THOMAS MITCHELL's** escalating bad behavior toward Plaintiff.

120.   That the foregoing occurrence was caused solely and wholly as a result of the negligence of the defendants, their agents, servants and employees, without any negligence on the part of the Plaintiff contributing thereto.

121.   That by reason of the foregoing, the Plaintiff was caused to suffer mental and emotional shock and distress and was damaged thereby.

122.   That Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower Courts, which would otherwise have jurisdiction.

123.   That Plaintiff is entitled to punitive damages as defendants' wrongdoing evinces a high degree of moral turpitude and demonstrates such wanton dishonesty as to imply criminal indifference to civil obligations.

<u>**COUNT XI**</u>
<u>**SEXUAL ASSAULT**</u>
**(Against Defendant Mitchell)**

124.   Plaintiff repeat and reallege by reference each and every allegation contained in the above stated paragraphs, and incorporates the same herein as though fully set forth.

125.   That **GENE THOMAS MITCHELL's** sexual comments and offensive conduct committed against Plaintiff **JENNIFER CALCANO** amounted to a series of events creating a reasonable apprehension in Plaintiff of immediate harmful, sexual and offensive contact to

Plaintiff's person, all of which were done intentionally by **GENE THOMAS MITCHELL** without Plaintiff' consent.

126.     That by reason of the foregoing, the Plaintiff were caused to suffer mental and emotional shock and distress and were damaged thereby.

127.     That Plaintiff **JENNIFER CALCANO** has been damaged in an amount which exceeds the jurisdictional limits of all lower courts, which would otherwise have jurisdiction.

128.     That Plaintiff is entitled to punitive damages as defendants' wrongdoing evinces a high degree of moral turpitude and demonstrates such wanton dishonesty as to imply criminal indifference to civil obligations.

<u>**COUNT XII**</u>
<u>**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**</u>
**(Against Defendant Mitchell)**

129.     Plaintiff repeats and realleges by reference each and every allegation contained in the above stated paragraphs, and incorporates the same herein as though fully set forth.

130.     That defendant **GENE THOMAS MITCHELL** engaged in conduct toward Plaintiff that was extreme and outrageous so as to exceed the bounds of decency in a civilized society, namely, he sexually attacked Plaintiff at the premises.

131.     That, by her actions and conduct, **GENE THOMAS MITCHELL** intended to and did intentionally or recklessly cause Plaintiff **JENNIFER CALCANO** severe emotional distress.

132.     That by reason of the foregoing, the Plaintiff were caused to suffer discomfort, and mental and emotional shock and distress and were damaged thereby.

133.    That defendant **GENE THOMAS MITCHELL**'s extreme and outrageous conduct was knowing, malicious, willful, and wanton.

134.    That Plaintiff **JENNIFER CALCANO** has been damaged in an amount which exceeds the jurisdictional limits of all lower courts, which would otherwise have jurisdiction.

135.    That Plaintiff **JENNIFER CALCANO** is entitled to punitive damages as defendants' wrongdoing evinces a high degree of moral turpitude and demonstrates such wanton dishonesty as to imply criminal indifference to civil obligations.

**COUNT XIII**
***RESPONDEAT SUPERIOR* FOR ACTIONS COMMITTED BY
DEFENDANT GENE THOMAS MITCHELL**
**(Against Defendant NYCHA)**

136.    Plaintiff repeats and realleges by reference each and every allegation contained in the above stated paragraphs, and incorporates the same herein as though fully set forth.

137.    That defendant **GENE THOMAS MITCHELL's** employer defendant, **NYCHA,** is vicariously liable for its employee **GENE THOMAS MITCHELL's** negligent and/or intentional acts of sexually assaulting Plaintiff **JENNIFER CALCANO,** without cause, provocation or justification while in the course of her employment as those acts were committed within the scope of the employee's employment.

138.    That defendants employers **NYCHA,** is vicariously liable for its employee defendant **GENE THOMAS MITCHELL's** negligent and/or intentional acts against Plaintiff **JENNIFER CALCANO** without cause, provocation or justification while in the course of his employment as those acts and the employee's conduct was generally foreseeable and a natural consequence of the employment.

139.     That defendant's employer **NYCHA,** is vicariously liable for its employee defendant **GENE THOMAS MITCHELL's** negligent and/or intentional acts against Plaintiff **JENNIFER CALCANO** without cause, provocation or justification while in the course of her employment as those acts and the employee's sexual conduct could have been reasonably anticipated by defendants **NYCHA.**

140.     That defendant's employer **NYCHA,** is vicariously liable for its employee defendant **GENE THOMAS MITCHELL's** negligent and/or intentional acts against Plaintiff **JENNIFER CALCANO** without cause, provocation or justification while in the course of his employment as those acts by defendant employee **GENE THOMAS MITCHELL** were a minor deviation from work-related activities is still acting with the scope of her employment for the purposes of *respondeat superior*.

141.     That as a result of the foregoing Plaintiff **JENNIFER CALCANO** sustained emotional distress.

142.     That said occurrence and the resulting injuries to Plaintiff **JENNIFER CALCANO** was caused solely and wholly by reason of the negligence and carelessness of defendant in the ownership, operation, management, maintenance, control, security and supervision of the premises and employees within the premises.

143.     That as a result of the foregoing, Plaintiff **JENNIFER CALCANO** was solely and wholly as a result of the negligence, carelessness and recklessness of the defendant NYCHA and **GENE THOMAS MITCHELL** and/or each of them, without any negligence on the part of the plaintiff contributing thereto.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter an Order that:

a.  Declares that the Defendants' discriminatory practices violate the Fair Housing Act, 42 U.S.C. §§ 3601, *et seq.* and New York State and City laws;

b.  Enjoins the Defendants, their agents, employees, and successors, and all other persons in the active concert or participation with them from:

 i.  Discriminating on the basis of sex, including engaging in sexual harassment, in any aspect of the rental or sale of a dwelling;

 ii.  Interfering with or threatening to take any action against any person engaged in the exercise or enjoyment of rights granted or protected by the Fair Housing Act and New York State and City laws;

 iii.  Failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, the victims of the Defendants' past unlawful practices to the position they would have been in but for the discriminatory conduct; and

 iv.  Failing or refusing to take such affirmative steps as may be necessary to prevent the recurrence of any discriminatory conduct in the future and to eliminate, as nearly as practicable, the effects of the Defendants' unlawful practices;

c.  Awards monetary damages to Plaintiff aggrieved by the Defendants' discriminatory conduct, pursuant to 42 U.S.C. § 3614(d)(1)(B) and 15

U.S.C. § 1691e(h), New York State Law, and New York City Laws;

d.  Awarding the Plaintiff compensatory and punitive damages, costs, attorney's

fees and such other relief as the Court deems appropriate.

e.  Assesses civil penalties against the Defendants to vindicate the public

interest, pursuant to 42 U.S.C. § 3614(d)(1)(C); and

f.  Awards such additional relief as the interests of justice may require.

Dated: December 10, 2019
       New York, New York

Respectfully submitted,

MARK DAVID SHIRIAN P.C.

By: _____
          Mark D. Shirian, Esq.
228 East 45th Street, Suite 1700-B
New York, New York 10017
Telephone: (212) 931-6530
Facsimile: (212) 898-0163
Email: mshirian@shirianpc.com
COUNSEL FOR PLAINTIFF